NANCY HERSH, ESQ., State Bar No. 49091
AMY ESKIN, ESQ., State Bar No. 127668
MARK E. BURTON, II, ESQ., State Bar No. 178400
JEANETTE HAGGAS, ESQ., State Bar No. 244713
HERSH & HERSH
A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA  94102-6388
(415) 441-5544

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# (SAN FRANCISCO DIVISION)

| | |
|---|---|
| HERSH & HERSH,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendant,<br><br>and<br><br>GUIDANT CORPORATION,<br><br>Intervenor. | CASE NUMBER C 06-4234 PJH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO JOINT MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS DEPARTMENT OF HEALTH AND HUMAN SERVICES AND INTERVENOR GUIDANT CORPORATION**<br><br>Date:      December 19, 2007<br>Time:     9:00 a.m.<br>Judge:    Hon. Phyllis J. Hamilton |

HERSHANDHERSH
A Professional Corporation

1

**TABLE OF CONTENTS**

2

Page

3

I.  INTRODUCTION ......................................................................................................... 1

4

II.  STATEMENT OF FACTS ........................................................................................... 1

5

III.  STATEMENT OF THE CASE ................................................................................... 2

6

IV.  ARGUMENT ............................................................................................................. 3

7

8

    A.  THE MOTION AND SUPPORTING AFFIDAVITS FAIL TO SHOW
       THAT SUMMARY JUDGMENT IS APPROPRIATE. .................................. 3

9

10

        1.  Only *Agency* Affidavits May Justify Nondisclosure: Thus, Summary
           Judgment Turns On Mr. Eckert's Declaration, Which Lacks
           Foundation And Contains Purely Hearsay Statements. ...................... 3

11

12

13

        2.  HHS' And Guidant's Affidavits Are Made In Bad Faith As
           Evidenced By Their Wholly Conclusory Statements And Failure To
           Explain *Why* Disclosure Of The Withheld Information Would Harm
           Guidant. ............................................................................................... 5

14

15

16

    B.  THE  DOCUMENTS  ARE  NOT  EXEMPTED  UNDER  FOIA
       BECAUSE EVT AND GUIDANT WAIVED *ALL* POTENTIALLY
       APPLICABLE PRIVILEGES UPON EXECUTING THE FELONY
       PLEA BARGAIN. ............................................................................................. 8

17

    C.  THE PUBLIC HAS A STRONG INTEREST IN THE DOCUMENTS
       SOUGHT BY PLAINTIFF'S FOIA REQUEST. ......................................... 10

18

19

20

    D.  EMPLOYEE  IDENTITIES  AND  BUSINESS  CONTACT
       INFORMATION ARE NOT PRIVILEGED UNDER EXEMPTION
       B(6), ESPECIALLY WHERE IT IS PUBLICLY AVAILABLE ON
       THE INTERNET. ............................................................................................. 10

21

22

    E.  HHS  WRONGFULLY  WITHHELD  INFORMATION  AND
       DOCUMENTS UNDER EXEMPTION B(4). ............................................... 13

23

        1.  "Trade Secrets" In The FOIA Context Are Narrowly Defined. ......... 13

24

        2.  All Documents Withheld Under Exemption b(4) Must Be
           "Privileged Or Confidential." ............................................................. 14

25

           a)  "Impairment prong." ................................................................ 15

26

           b)  "Competitive harm prong." ...................................................... 16

27

           c)  "Confidential or Privileged Information." ................................ 17

28

HERSHANDHERSH
A Professional Corporation

F.  PLAINTIFF  HAS  NO  OBLIGATION  TO  RETURN  ANY
DOCUMENTS PRODUCED BY HHS. ........................................................ 19

G.  THE    COURT    SHOULD    REVIEW    THE    RESPONSIVE
DOCUMENTS *IN CAMERA* TO UNEARTH HHS' WRONGFUL
WITHHOLDINGS. ................................................................................... 21

H.  THE COURT SHOULD SANCTION HHS AND GUIDANT FOR
BRINGING THIS MOTION AND SUPPORTING AFFIDAVITS IN
BAD FAITH............................................................................................. 22

V.  CONCLUSION.................................................................................................... 22

HERSHANDHERSH
A Professional Corporation

1

## **TABLE OF AUTHORITIES**

2

Page

*Cases*

*ACLU v. DOD*, 339 F. Supp. 2d 501 (S.D.N.Y. 2004)..............................................................10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................................3

*Appleton v. FDA*, 451 F. Supp. 2d 129 (D.D.C. 2006).............................................................13

*Bagley v. TRW, Inc.*, 204 F.R.D. 170 (C.D. Cal. 2001).............................................................19

*Chi. Tribune Co. v. FAA*, No. 97-2363, 1998 WL 242611
(N.D. Ill. May 7, 1998)......................................................................................................13

*Citizens Comm'n on Human Rights v. FDA*, No. 92-5313, 1993 WL 1610471
(C.D. Cal. May 10, 1993)............................................................................................13, 18

*CNA Fin. Corp. v. Donovan*, 830 F.2d 1132 (D.C. Cir. 1987)..............................................16

*Critical Mass Energy Proj. v. Nuclear Reg. Com'n*, 975 F.2d 871 (D.C. Cir. 1992)..........15

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144
(D.C. Cir. 2001).................................................................................................................13

*Flores v. Albertson's, Inc.*, No. 01-0515, 2004 WL 3639290 (C.D. Cal. April 9,
2004)...................................................................................................................................19

*Frazee v. U.S. Forest Serv.*, 97 F.3d 367 (9th Cir. 1996)......................................................16

*Fujisawa Pharmaceutical Co. v. Kapoor*, 162 F.R.D. 539 (D.C. Ill. 1995)..........................9

*GC Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109 (9th Cir. 1994)............................16

*Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926 (N.D. Cal. 1976)...................8, 9

*Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323 (N.D. Cal. 1985)....................................19

*Heeney v. FDA*, 7 F. App'x 770 (9th Cir. 2001)....................................................................18

*Heeney v. FDA*, No. 97-5461, 1999 U.S. Dist. LEXIS 23365
(C.D. Cal. Mar. 18, 1999)..................................................................................................13

*Hemenway v. Hughes*, 601 F. Supp. 1002 (D.D.C. 1985)......................................................3

*Herrick v. Garvey*, 200 F. Supp. 1321 (D. Wyo. 2000)........................................................13

*Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys.*,
463 F.3d 239 (2d Cir. 2006)..............................................................................................17

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HERSHANDHERSH
A Professional Corporation

*Judicial Watch, Inc. v. Dep't of the Army*, 402 F. Supp. 2d 241 (D.D.C. 2005) ...................4

*Kamman v. IRS*, 56 F.3d 46 (9th Cir. 1995).................................................................... 3, 4, 5

*King v. U.S. Dep't of Justice*, 830 F.2d 210 (D.C. Cir. 1987)...............................................4

*L.A. Times Communications v. Dep't of the Army*, 442 F. Supp. 2d 880 (C.D. Cal. 2006).........................................................................................................3

*Landfair v. U.S. Dep't of the Army*, 645 F. Supp. 325 (D.D.C. 1986)................................ 14

*Lee v. FDIC*, 923 F. Supp. 451 (S.D.N.Y. 1996) .................................................................. 16

*Lion Raisins Inc. v. USDA*, 354 F.3d 1072 (9th Cir. 2004) ................................................. 16

*Martin Marietta Corp. v. Dalton*, 974 F. Supp. 37 (D.D.C. 1997) ..................................... 16

*NARA v. Favish*, 541 U.S. 157 (2004)................................................................................. 11

*Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974).................... 14

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114 (9th Cir. 1988)............................ 21

*Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16 (D.C. Cir. 1999) .................................................................................................... 4, 5

*Nowak v. U.S.*, No. 98-56656, 2000 WL 60067 (9th Cir. Jan. 21, 2000) ............................ 21

*Or. Natural Desert Ass'n v. U.S. Dep't of the Interior*, 24 F. Supp. 2d 1088 (D. Or. 1998)........................................................................................................... 11

*Pub. Citizen Health Research Group v. FDA*, 964 F. Supp. 413 (D.D.C. 1997)................. 15

*Public Citizen Health Research Group v. FDA*, 704 F.2d 1280 (D.C. Cir. 1983) ....................................................................................................... 13, 16

*Ripskis v. HUD*, 746 F.2d 1 (D.C. Cir. 1984) ..................................................................... 11

*Spannaus v. DOJ*, 813 F.2d 1285 (4th Cir. 1987).................................................................4

*Summers v. Dep't of Justice*, 140 F.3d 1077 (D.C. Cir. 1998)..............................................4

*Summers v. U.S. Dep't of Justice*, 999 F.2d 570 (D.C. Cir. 1993) ........................................3

*Teich v. FDA*, 751 F. Supp. 243 (D.D.C. 1990) .................................................................. 15

*U.S. v. Grammer*, 513 F.2d 673 (9th Cir. 1975)....................................................................8

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) .................................................................4

*Wash. Post Co. v. HHS*, 690 F.2d 252 (D.C. Cir. 1982)...................................................... 14

HERSHANDHERSH
A Professional Corporation

*Wishart v. Comm'r*, No. 98-17248, 1998 WL 667638 (N.D. Cal. Aug. 6, 1998)..................4

## *Statutes*

28 U.S.C. §1746 .........................................................................................................3

5 U.S.C. §552(a)(4)(B) ....................................................................................... 3, 5, 6, 21

5 U.S.C. §552(b)(4) ........................................................................................................ 12

5 U.S.C. §552(b)(6) ........................................................................................................ 11

## *Rules*

Fed. R. Civ. Proc. 56(e) ....................................................................................................3

Fed. R. Civ. Proc. 56(g) .................................................................................................22

Fed. R. Evid. 801(c).........................................................................................................5

## *Other Authorities*

FOIA   Guide,   *Litigation   Considerations*,   March   2007,   *available   at*
http://www.usdoj.gov/oip/foia_guide07.htm................................................... 3, 5, 13

HERSHANDHERSH
A Professional Corporation

HERSHANDHERSH
A Professional Corporation

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

Lawsuits arising under the Freedom Of Information Act ("FOIA") are unique in that the plaintiff and the court are left to rely solely on the government's representations that certain documents are exempted from disclosure.   Indeed, HHS' response to Plaintiff's September 19, 2005, Request ("FOIA Request") under FOIA indicates that its claims of exemption are unfounded:   (1) withheld documents were attached to the moving papers here, (2) withheld documents have been publicly available on PACER since July 2007, (3) withheld "personnel information" is easily accessible on the internet, (4) policies (and their associated numbers) for implementing compliance with FDA regulations are not "trade secrets" under FOIA, and (5) the name and report of an independent review organization is not a "trade secret".

Further, HHS failed to provide a sufficiently detailed agency affidavit or *Vaughn* Index to warrant summary judgment.   Accordingly, summary judgment should be denied.[1] In addition, Plaintiff should be allowed discovery to investigate the egregious mishandling of its FOIA request, and further, Plaintiff is entitled to sanctions.

## II.   STATEMENT OF FACTS

Guidant's wholly-owned subsidiary, Endovascular Technologies, Inc. ("EVT") pled guilty to ten felony charges as a result of its misconduct related to the development, marketing, and sale of the ANCURE Endograft System ("Ancure").[2] Declaration of Jeanette Haggas ("Decl.") ¶4, Exh. A (Felony Plea Bargain); Exh. B (Guilty Plea Transcript).   On June 30, 2003, Guidant entered into a Corporate Integrity Agreement ("CIA") with the Office of Inspector General ("OIG"), whereby Guidant agreed to a reciprocal monitoring program with EVT.   Decl. ¶7, & Exh. D (CIA).   Specifically, each

---

[1] Whether HHS inadvertently produced documents has nothing to do with whether HHS has shown that summary judgment is appropriate.   Plaintiff will address HHS' bootstrapped motion to compel *separately*.
[2] The Ancure device is a medical product used for the treatment of abdominal aortic aneurysms (a stretched and bulging section in the wall of the aorta that supplies oxygen-rich blood to the lower body).

- 1 -

company assumed responsibility for the other's compliance with the FDA and federal health care program requirements. Decl. ¶7, Exh. D (CIA) at 1, 18. Further, the CIA required Guidant to provide certain documents to the OIG: documents demonstrating Guidant's compliance with the Felony Plea Bargain. Decl. ¶4, & Exh. A (Felony Plea Bargain). These are the very documents that Plaintiff requested in its September 19, 2005, FOIA Request.

The compliance documents are crucial to examine Guidant's and EVT's adherence to their obligations under the Felony Plea Bargain and CIA. They include: Implementation Reports; Annual Reports; Data Monitoring Committee ("DMC") Review Reports; and Independent Review Organization ("IRO") Reports, including any and all Medical Device Reporting ("MDR") Review Reports. Decl. ¶8, Exh. E (FOIA Request).

Although Plaintiff requested documents from the Department of Health and Human Services ("HHS") in September 2005, HHS failed to respond within the statutory 20 days. Decl. ¶9. Instead, HHS provided an "interim" response on March 31, 2006, more than five months later. Decl. ¶9. HHS provided a "final" response on February 27, 2007 after Plaintiff filed its Complaint. Decl. ¶11. Plaintiff timely filed an appeal of the final response on March 23, 2007. Decl. ¶12.

### III. STATEMENT OF THE CASE

Because Plaintiff did not receive a complete and timely response to its FOIA Request, Plaintiff filed a Complaint on July 10, 2006. Defendant filed its Answer on January 9, 2007, admitting that it failed to timely respond to Plaintiff's FOIA request. The parties stipulated to the intervention of Guidant Corporation on April 2, 2007. The Court ordered HHS to complete its appeal process, which it did on August 23, 2007. Decl. ¶13. That same day, HHS produced another set of documents, which it indicated was a "corrected" production in response to Plaintiff's two year old FOIA Request. Decl. ¶13, Exh. I.

MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF PLTF'S OPPOSITION TO JOINT MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS HHS & INTERVENOR GUIDANT CORPORATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HERSHANDHERSH
A Professional Corporation

## IV.  ARGUMENT

### A.    THE MOTION AND SUPPORTING AFFIDAVITS FAIL TO SHOW THAT SUMMARY JUDGMENT IS APPROPRIATE.

The motion and supporting affidavits fail to demonstrate that no genuine issue of material fact exists. Specifically, HHS must show it performed an adequate search for responsive documents and justify its withholdings. FOIA Guide, *Litigation Considerations*, March 2007, *available at* http://www.usdoj.gov/oip/foia_guide07.htm.

Affidavits and documents in support of summary judgment must be also admissible as evidence. Fed. R. Civ. Proc. 56(e); *Kamman v. IRS*, 56 F.3d 46, 49 (9th Cir. 1995) (finding that agency failed to satisfy burden of proof and awarding summary judgment to plaintiff when agency affidavits "are nothing more than "conclusory and generalized allegations"). Moreover, the "underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." 28 U.S.C. §1746; *see Summers v. U.S. Dep't of Justice*, 999 F.2d 570, 572-73 (D.C. Cir. 1993); *accord*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (evidence of the non-movant is to be believed, and all justifiable inferences are drawn in his favor).

### 1.    Only *Agency* Affidavits May Justify Nondisclosure: Thus, Summary Judgment Turns On Mr. Eckert's Declaration, Which Lacks Foundation And Contains Purely Hearsay Statements.

Summary judgment may be granted solely on the basis of *agency affidavits* if they provide reasonably detailed descriptions of the withheld information in a factual and nonconclusory manner, and if there is no contradictory evidence on the record or evidence of agency bad faith. 5 U.S.C. §552(a)(4)(B) (emphasis added); *see, e.g., L.A. Times Communications v. Dep't of the Army*, 442 F. Supp. 2d 880, 899-900 (C.D. Cal. 2006); *Hemenway v. Hughes*, 601 F. Supp. 1002, 1004 (D.D.C. 1985) (recognizing that in FOIA cases, summary judgment does not hinge on existence of genuine issue of material fact, but rather on whether *agency affidavits* are reasonably *specific, demonstrate logical use of*

MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF PLTF'S OPPOSITION TO JOINT MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS HHS & INTERVENOR GUIDANT CORPORATION

1   *exemptions*, and are not controverted by evidence in record or by bad faith) (emphasis

2   added); *Wishart v. Comm'r*, No. 98-17248, 1998 WL 667638 (N.D. Cal. Aug. 6, 1998),

3   *aff'd*, 1999 WL 985142 (9th Cir. June 25, 1999); *Judicial Watch, Inc. v. Dep't of the Army*,

4   402 F. Supp. 2d 241, 245 (D.D.C. 2005) (stating, "the defendant *agency* has the burden of

5   justifying nondisclosure") (emphasis added).

6       To do this, the government must submit detailed affidavits, identifying the

7   documents withheld and explaining why they fall under the claimed exemptions.  *See*

8   *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *King v. U.S. Dep't of*

9   *Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987); *Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C.

10  Cir. 1973); *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 18 (D.C.

11  Cir. 1999) (finding agency affidavits conclusory and denying summary judgment).

12  Moreover, agency affiants must have personal knowledge of the withheld records, the way

13  in which information is processed, and the documents at issue.  *Spannaus v. DOJ*, 813 F.2d

14  1285, 1289 (4th Cir. 1987); *see Kamman*, 56 F.3d at 49 (rejecting affidavit that revealed

15  that signer "did not even review the actual documents at issue").

16      Here, the government's sole affidavit is silent as to the adequacy of HHS'

17  withholdings, and replete with unfounded, conclusory statements.  First, Mr. Eckert does

18  not have personal knowledge of the initial decision as to what to withhold.  Rather, he

19  merely states he has reviewed the documents and agrees with the decision to withhold

20  certain information.  In fact, he never identifies who at HHS was responsible for initially

21  determining what information to withhold.  *See e.g.*, Eckert Decl. ¶14 ("The agency

22  withheld..."); ¶15 ("my office"); ¶16 ("we discovered").  Second, his Declaration contains

23  inadmissible hearsay statements and does not adequately explain why the withheld

24  information is exempted.

25      Instead, HHS shirked its responsibility under FOIA and rubberstamped Guidant's

26  reasons as to why the documents should be withheld.  Eckert Decl. ¶1 ("I understand that

27  Guidant Corporation is filing a separate declaration to explain the nature of the withheld

28

HERSHANDHERSH
A Professional Corporation

- 4 -

Guidant documents."), ¶19 ("A separate declaration filed by Guidant Corporation explains the confidential nature of the information, as well as the competitive nature of the submitter's industry and the likelihood of substantial competitive harm."). HHS cannot incorporate another's statements and not set forth reasons for nondisclosure that stand on their own. As filed, HHS' affidavit offered zero evidence as to *why* disclosure would harm Guidant, but attempted to incorporate Guidant's reasons by reference, which is classic hearsay. *See* Eckert Decl. ¶¶1, 19; s*ee also* Fed. R. Evid. 801(c). HHS must supply standalone, admissible reasons for withholding information from Plaintiffs' FOIA Request. 5 U.S.C. §552(a)(4)(B); *see Niagara Mohawk Power Corp.*, 169 F.3d at 18; *Kamman*, 56 F.3d at 49; FOIA Guide, *available at* http://www.usdoj.gov/oip/foia_guide07.htm   HHS failed to do so, thus summary judgment should be denied.

### 2. HHS' And Guidant's Affidavits Are Made In Bad Faith As Evidenced By Their Wholly Conclusory Statements And Failure To Explain *Why* Disclosure Of The Withheld Information Would Harm Guidant.

Mr. Eckert's Declaration is proof of Plaintiff's persistent allegations of bad faith: Guidant improperly controlled HHS' decisions as to what to withhold from Plaintiff's FOIA Request. Decl. ¶12, Exh. H. Mr. Eckert's Declaration does nothing to demonstrate that HHS indeed reviewed the responsive documents in the first place. In other words, nowhere in Eckert's Declaration does he state that HHS, not Guidant, performed the initial review of responsive matter. Although the moving papers allege otherwise (Motion at 10:4-5), a careful review of Eckert's Declaration shows that he never stated that he himself reviewed the documents *prior* to the initial March 31, 2006, "interim response" or the February 27, 2007, "final response." To the contrary, it appears he only reviewed the documents upon appeal. *See* Eckert Decl. ¶22.

In fact, because he points to Guidant's declaration to "explain the nature of the withheld Guidant documents," it is more likely than not that Guidant, not HHS, determined what to withhold and HHS merely rubberstamped Guidant's determination. *See* Eckert

1   Decl. ¶¶1, 19. The statements contained in both Eckert's and Chin-Purcell's Declarations

2   are conclusory and do not explain specific, detailed reasons why Guidant would suffer

3   competitive harm when it (1) no longer exists, and (2) maintains a "highly tailored" and

4   "custom" compliance program.

5       Further, the *Vaughn Index* (attached as Exhibit 8 to Eckert's Declaration) fails to

6   provide sufficiently detailed information other than a statement asserting the claimed

7   exemption. Thus, facially, HHS has not met its burden to present evidence demonstrating

8   that no material issue of fact remains.

9       Guidant claims that disclosure of any of the withheld information would be

10  "devastating." Chin-Purcell Decl. ¶28. However, this case is uniquely positioned in that

11  some contested documents have been publicly available through PACER since July 3,

12  2007. *See* Exhibits G-M to the Declaration Of Jeanette Haggas In Support Of Motion To

13  Compel, Dkt. No. 67 (*e.g.* compliance policy numbers, employee names, IRO identity and

14  report); Decl. ¶¶17-18. No devastating consequences have occurred.

15      Guidant's instructions to HHS to hold secret the information it provided HHS

16  pursuant to the CIA do not automatically confer a FOIA exemption, nor could they because

17  Guidant waived privileges as to these documents. Instead, the agency itself must determine

18  independent reasons to withhold the information from the public. 5 U.S.C. §552(a)(4)(B);

19  *see*, Part A.1, *supra*. In addition, Guidant was a party to the Felony Plea Bargain. Decl. ¶4,

20  Exh. A (Felony Plea Bargain) at 15 (signature block is for EVT "and its Parent

21  Corporation," meaning Guidant); Decl. 7, Exh. D (CIA). Guidant is therefore is bound by

22  its terms. Further, during the sentencing hearing, Guidant acknowledged it could not

23  protect the information Plaintiff seeks. Decl. ¶5, Exh. B (Guilty Plea Transcript) at 21:15-

24  16 ("Guidant will not be able to assert a privilege to anything that [the government] would

25  seek in connection with the investigation."). The information Plaintiff seeks is the very

26  information that the government obtained pursuant to the CIA, which was executed to

27  ensure Guidant's compliance with the FDA. Thus, Guidant is barred from asserting the

28

HERSHANDHERSH
A Professional Corporation

- 6 -

documents turned over the HHS pursuant to the CIA are "confidential," "privileged," or "trade secrets."

Guidant's twist on the program guidance mandated by the government does not confer protection under FOIA exemption b(4) for "trade secrets." The HHS and OIG codified the framework for compliance programs for medical device manufacturers. Decl. ¶31, Exh. X (Fed. Reg., vol. 68 no. 86, *OIG Compliance Program Guidance for Pharmaceutical Manufacturers* (May 5, 2003), endnote 5 ("this compliance program guidance may also have application to manufacturers of . . . medical devices").

Moreover, Guidant is trying to assert that the withheld information is a "trade secret," but Guidant itself no longer exists. Guidant was acquired by Boston Scientific Corporation on or about January 2006. Even if Guidant's acquirer used Guidant's compliance program and it was construed as a "trade secret," the FOIA exemption would not apply because no party demonstrates (nor can it) that *Guidant* would be competitively disadvantaged if the compliance program was disclosed. *See*, Part D.1(b), *infra* (a "trade secret" in the FOIA context is limited to ideas that will benefit competitors at the expense of the creating party). Indeed, no party suggests that Guidant's compliance program is still in use today.

Finally, chief competitors such as Pfizer Inc. invite public inquiry of their FDA compliance programs, and announce their organizational structure and processes for reporting. *See e.g.*, Decl. ¶25, Exh. R. Guidant also shared its compliance strategies with Johnson & Johnson. Decl. ¶21, Exh. N (joint powerpoint presentation). Because Guidant concedes that competitors have "highly tailored" compliance programs, and because competitors like Pfizer publish theirs online, it makes no sense that Guidant (a company that no longer exists) would assert that its compliance program either is a "trade secret" or could benefit competitors.

MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF PLTF'S OPPOSITION TO JOINT MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS HHS & INTERVENOR GUIDANT CORPORATION

**B.  THE DOCUMENTS ARE NOT EXEMPTED UNDER FOIA BECAUSE EVT AND GUIDANT WAIVED *ALL* POTENTIALLY APPLICABLE PRIVILEGES UPON EXECUTING THE FELONY PLEA BARGAIN.**

The Felony Plea Bargain waived any privilege that might have attached to the documents Plaintiff sought in its FOIA Request. Decl. ¶4, Exh. A (Felony Plea Bargain) at 10 ("[EVT] agrees to give up all rights that it would have if it chose to proceed to trial, including . . . to raise any other Fourth or Fifth Amendment claims") & 12 ("[EVT] will not object, including asserting any privilege against the government"). This waiver applied to Guidant as well. "Guidant will not be able to assert a privilege to anything that [the government] would seek in connection with the investigation." Decl. ¶5, Exh. B (Guilty Plea Transcript) at 21:15-16; Decl. ¶4, Exh. A (Felony Plea Bargain) at 15 (signature block for EVT "and its Parent Corporation," meaning Guidant); Decl. 7, Exh. D (CIA).

Importantly, voluntary disclosure of information waives the privileges that may have attached to that information, even if the waiver of certain privileges was unintentional. *U.S. v. Grammer*, 513 F.2d 673, 676 (9th Cir. 1975) (holding that disclosure of fingerprint report waived attorney-client and Fifth Amendment privileges); *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1976) (holding that voluntary disclosure of part of a document "is a waiver as to the remainder . . . about the same subject").

Thus, EVT and Guidant waived any privilege as to the documents they turned over to the government in connection with the Felony Plea Agreement and CIA. Further, HHS cannot resurrect these privileges. As the federal practice guide articulates:

> First, [the waiver] applies to the entire world; waiver due to an interaction with one person ordinarily deprives the privilege-holder of the right to assert the privilege against anyone else. Second, it often is held to extend beyond materials revealed and to include any other materials or communications on the same subject matter. For this reason, the consequences of waiver in much civil litigation can be very great." 8 Fed. Prac. & Proc. Civ. 2d §2016.2 (2007) (citing *U.S. v. Workman*, 138 F.3d 1261 (8th Cir. 1998) ("The waiver covers any information directly related to that which was actually disclosed.")).

Once EVT and Guidant waived its privileges and rights, any privileges that may have raised in the future as to the Ancure documents were also waived. Accordingly, HHS' claimed

- 8 -

HERSHANDHERSH
A Professional Corporation

exemptions lack foundation and the Court should compel HHS to withdraw these claims and produce the requested documents.

HHS also produced unredacted versions of "exempted" information, which waives any exemption as to similar information. Indeed, attached as exhibits to the Declaration of Michele Chin-Purcell are documents that HHS produced in redacted form as recently as August 23, 2007 (which supposedly "corrected" the production). *Compare* Chin-Purcell Decl. Exhs. 2-3 *with* Haggas Decl. ¶¶14-15, Exhs. J-K. Thus, where the submitter itself waives a privilege, the government may not assert the privilege instead.

No party has moved to seal the allegedly inadvertently produced documents that were filed under Docket Number 67 (dated July 2007). Those Exhibits were produced by HHS and disclosed the name of EVT's independent review organization, the engagement letter, and report; the number of reportable events as well as the reports; and Guidant's compliance policy numbers and related information. Plaintiff's Motion For Discovery (Dkt. No. 66) & Exhs. G-M (Dkt. No. 67); Decl. ¶¶17-18. Notably, report summaries of reportable events can be found online at the FDA's MAUDE database.

Based on these examples, it is clear that additional documents (or portions thereof) are also withheld without basis. *See Fujisawa Pharmaceutical Co. v. Kapoor*, 162 F.R.D. 539 (D.C. Ill. 1995) ("[v]oluntary disclosure of privileged information about a matter waives the privilege as to all information on the same subject matter."); *Handgards, Inc.*, 413 F. Supp. at 929. Accordingly, Guidant and HHS have waived exemptions, if any were valid, by allowing the documents to remain available to the public through the Court's PACER website or a court records request for the last four months.

HHS and Guidant cannot arbitrarily choose to disclose or withhold this non-confidential information. Accordingly, the Court should compel production of the documents Plaintiff seeks, or in the alternative, allow discovery concerning the remainder of information HHS wrongfully withheld.

- 9 -

**C.** **THE PUBLIC HAS A STRONG INTEREST IN THE DOCUMENTS SOUGHT BY PLAINTIFF'S FOIA REQUEST.**

The public has a strong interest in and is entitled to access to the information Plaintiff seeks. Thousands of people suffered injuries as a result of EVT's deceit, including death. Decl. ¶6 & Exh. C (June 13, 2003, NY Times article). Plaintiff's FOIA Request sought the very information that EVT was required to turn over to the government pursuant to the Felony Plea Agreement. Despite the company's guilty plea, the government failed to prosecute a single individual. The public is entitled to scrutinize the government's enforcement of the guilty plea and its relationship with major medical device manufacturer. "In enacting FOIA, Congress "'emphasize[d] a preference for the fullest possible agency disclosure of . . . information consistent with a responsible balancing of competing concerns . . . .'" *ACLU v. DOD*, 339 F. Supp. 2d 501, 504 (S.D.N.Y. 2004). Here, the *Vaughn* Index proves that none of those competing concerns exist. Equally unprotected are Guidant's "Disclosure Logs" which detail reports from employees concerned the company is engaging in unlawful conduct. Motion at 19:20-22. The public would be extremely interested in this information, particularly given Guidant's product liability lawsuits stemming from its defective defibrillators.

**D.** **EMPLOYEE IDENTITIES AND BUSINESS CONTACT INFORMATION ARE NOT PRIVILEGED UNDER EXEMPTION B(6), ESPECIALLY WHERE IT IS PUBLICLY AVAILABLE ON THE INTERNET.**

HHS withheld the business telephone numbers, business addresses, business email addresses, signatures, and position titles for several employees under Exemption b(6).[3] Haggas Decl. ¶¶14-15, Exhs. J-K. Generally, HHS and Guidant claim that release of this information "would constitute an invasion of privacy." Eckert Decl. ¶21.

---

[3] The sole piece of non-business related information is Jon Nygaard's home contact information. *See* entry 3, Eckert Decl., Exh. 8 (*Vaughn* Index). But, HHS disclosed his name, and his home contact information is easily available through an internet search on www.google.com or www.whitepages.com

- 10 -

HERSHANDHERSH
A Professional Corporation

A privacy interest must be ascertained that would be threatened by disclosure. If found, the privacy interest must outweigh the public's interest in order to remain protected. *See Ripskis v. HUD*, 746 F.2d 1, 3 (D.C. Cir. 1984). The names, work contact information, and position titles of Guidant's employees are not privileged information. *See, e.g.,* 5 U.S.C. §552(b)(6); *Or. Natural Desert Ass'n v. U.S. Dep't of the Interior,* 24 F. Supp. 2d 1088, 1089 (D. Or. 1998) (concluding that cattle owners who violated federal grazing laws have "diminished expectation of privacy" in their names when such information relates to commercial interests). Once disclosed, "the information belongs to the general public." *NARA v. Favish*, 541 U.S. 157, 174 (2004).

Most of the information HHS withheld under Exemption b(6) has been released to the public already. First, HHS withheld the name and signature block on documents, which were produced on August 23, 2007, in response to Plaintiff's appeal. Decl. ¶¶13-15, Exh. I-K. However, these documents are attached without redaction to the Declaration of Michele Chin-Purcell, Ph.D. as Exhibits 2 and 3. Haggas Decl. ¶¶14-15, Exhs. J-K. HHS and Guidant cannot withhold responsive and non-exempt information only to produce it at a more convenient time.

Second, review of the documents that have been repeatedly produced by HHS shows that there is no basis for HHS' claimed exemptions. For instance, Guidant claims the identities of compliance committee members and their business contact information are secret. But, Guidant, as a publicly traded company, regularly identifies its employees, particularly the executive board members who comprise its compliance committee. *See e.g.*, Decl. ¶16, Exh. L (SEC filings); *see, e.g.*, Guidant Corporation, Proxy Statement, Annual Meeting of Shareholders (May 17, 1999), *available at* http://www.secinfo.com/dsvRs.61Nc.htm. Especially where Guidant provided the biographical and income information of its compliance committee members (including stock options that their immediate family owns) through its SEC filings, proxy statements, and annual reports or meeting minutes, HHS' withholding of their identities is entirely

- 11 -

HERSHANDHERSH
A Professional Corporation

1   inappropriate. *See e.g.*, Decl. ¶16, Exh. L (SEC Filings); Exh. N (powerpoint presentation

2   identifying compliance committee members with accompanying photographs, *available at*

3   www.ehcca.com/presentations/ pharmacolloquium2/mehrotra.ppt., dated June 6, 2005);

4   Exh. 20 (internet website printouts from www.zoominfo.com and www.whitepages.com

5   listing work telephone and address information for Guidant Compliance Committee officers

6   Kathy Lundberg and Michele Chin-Purcell); *see* http://www.secinfo.com, *Guidant*

7   (available for free).

8        Equally invalid are HHS' redactions of the signature blocks on the compliance

9   certificates, when the acting compliance officer's names appear throughout the "corrected"

10   August 2007 production. *Compare* Decl. ¶¶22-23, Exh. O-P *with* Decl. ¶24, Exh. Q

11   (indicating Morris Waxler was EVT's compliance officer in 2003 and Kathy Lundberg is

12   Guidant's compliance officer).

13        Guidant and HHS cite to a number of inapplicable cases to justify HHS'

14   withholdings.   Motion at 21-22.   Plaintiff does not seek to learn the "social security

15   numbers, personal medical information, personal opinions, dates of birth, marital status,

16   number of children, citizenship information, credit card numbers, or sources of private

17   research income." *Id.*  Indeed, neither HHS nor Guidant allege that this is the type of

18   information withheld under Exemption b(6).  Instead, the "corrected" production makes

19   clear that the redacted information is limited to business contact information and identities

20   of certain compliance committee members.    This information is not confidential.

21   Moreover, no legal authority holds that an employee's name should not be disclosed except

22   for national security purposes, which are not present here.

23        These examples clearly demonstrate that HHS and Guidant's Motion For Summary

24   Judgment is brought in bad faith.  Accordingly, it should be denied.

25

26

27

28

HERSHANDHERSH
A Professional Corporation

- 12 -

**E.    HHS WRONGFULLY WITHHELD INFORMATION AND DOCUMENTS UNDER EXEMPTION B(4).**

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. §552(b)(4). The exemption covers only two categories of information:   "(1) trade secrets; and (2) information that is [] commercial or financial . . . *and* [] privileged or confidential." FOIA Guide, *available at* http://www.usdoj.gov/oip/foia_guide07.htm (emphasis in original).

**1.    "Trade Secrets" In The FOIA Context Are Narrowly Defined.**

A "trade secret" is narrowly defined as "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1288 (D.C. Cir. 1983). This definition also incorporates a requirement that there be a "direct relationship" between the trade secret and the productive process. *Id.*; *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.,* 244 F.3d 144, 150-51 (D.C. Cir. 2001) (emphasizing that the definition "narrowly cabins trade secrets to information relating to the 'productive process' itself").

Ultimately, Exemption b(4) protects manufacturing and design information from public disclosure, but not much else. *Appleton v. FDA*, 451 F. Supp. 2d 129, 142 & n.8 (D.D.C. 2006); *Herrick v. Garvey*, 200 F. Supp. 2d 1321, 1326 (D. Wyo. 2000) (protecting technical blueprints); *Heeney v. FDA*, No. 97-5461, 1999 U.S. Dist. LEXIS 23365, at *25 & n.13 (C.D. Cal. Mar. 18, 1999) (protecting "compliance testing" and "specification of the materials used in constructing" electrode catheter), *aff'd*, 7 F. App'x 770 (9th Cir. 2001); *Citizens Comm'n on Human Rights v. FDA*, No. 92-5313, 1993 WL 1610471, at *7 (C.D. Cal. May 10, 1993) (protecting "information about how a pioneer drug product is formulated, chemically composed, manufactured, and quality controlled"), *aff'd in part & remanded in part on other grounds*, 45 F.3d 1325 (9th Cir. 1995).

- 13 -

HERSHANDHERSH
A Professional Corporation

1
2
3
4
5
6
7

"The mere fact that an event occurs in connection with a commercial operation does not automatically transform documents regarding that event into commercial information." *Chi. Tribune Co. v. FAA*, No. 97-2363, 1998 WL 242611, at \*2 (N.D. Ill. May 7, 1998). "Examples of items usually regarded as commercial or financial information include: business sales statistics; research data; technical designs; customer and supplier lists; profit and loss data; overhead and operating costs; and information on financial condition." *See, e.g., Landfair v. U.S. Dep't of the Army*, 645 F. Supp. 325, 327 (D.D.C. 1986).

8
9
10
11
12
13
14

HHS withheld Guidant's policies for FDA compliance and the associated internal policy numbers, the identity of the independent review organization and report, and information regarding the company's organizational structure. But, this information is categorically excluded from "trade secrets" under the narrow definition applied in FOIA cases. Moreover, this very information has been available to the public since July. *See* Dkt. No. 67. Accordingly, HHS' withholdings are improper.

15
16

### 2. All Documents Withheld Under Exemption b(4) Must Be "Privileged Or Confidential."

17
18
19
20
21
22
23
24
25
26

Guidant uses FOIA Exemption b(4) to shield its annual reports, implementation reports, and compliance program information from disclosure because Guidant claims it never shared this information.[4] But, the test for confidentiality is an objective one: whether information would customarily be secreted from the public by the person from whom it was obtained is not dispositive. *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 766 (D.C. Cir. 1974); *see Wash. Post Co. v. HHS*, 690 F.2d 252, 268 (D.C. Cir. 1982) (citing *Nat'l Parks*). Instead, "confidential" information is information that is likely to either "(1) impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks*, 498 F.2d at 770.

27
28

---

[4] *But see*, Decl. ¶21, Exh. N (Guidant and Johnson & Johnson present joint powerpoint lecture on compliance programs).

HERSHANDHERSH
A Professional Corporation

### a) ☐☐ "Impairment prong."

Here, HHS' disclosure of Guidant's policies and procedures will not impair Guidant's future dealings with the government. Indeed, Guidant and EVT provided the documents to the government pursuant to a Felony Plea Bargain and CIA agreement due to EVT"s "knowing and willful" misrepresentations concerning Ancure. Decl. ¶5, Exh. B (Guilty Plea Transcript) at 8:17-25. Thus any anticipated impairment in the government's future dealings with Guidant cannot be blamed on HHS' disclosure here, but perhaps Guidant's continued misconduct.

Indeed, the "impairment prong" applies to limited situations in which information is required to be provided to the government, but disclosure of that information under the FOIA will result in a diminution of the "reliability" or "quality" of what is submitted. *Critical Mass Energy Proj. v. Nuclear Reg. Com'n*, 975 F.2d 871, 878 (D.C. Cir. 1992); *Pub. Citizen Health Research Group v. FDA*, 964 F. Supp. 413, 415 (D.D.C. 1997). Given Guidant's history with fraudulent conduct, it would seem that Guidant has a sufficient interest in procuring information to the government to boast FDA compliance, avoid additional product liability lawsuits, and rebuild good will. *See, e.g.*, *Teich v. FDA*, 751 F. Supp. 243, 252 (D.D.C. 1990) (rejecting, as "absurd," a submitter's contention that companies would be less likely to conduct and report safety tests to the FDA for fear of public disclosure, because the companies' own interests in engendering good will and in avoiding product liability suits is sufficient assurance that they will conduct "the most complete testing program" possible).

EVT and Guidant were forced to supply the information Plaintiff seeks pursuant to a Felony Plea Bargain. Whether public dissemination of the information sought may impair Guidant's future disclosures to the government is therefore irrelevant. Moreover, the information sought centers around the reporting obligations to the government pursuant to the CIA and adherence to federal regulations, which will not be impaired by disclosure of the compliance policies. Importantly, EVT and Guidant are required to disclose some of

- 15 -

HERSHANDHERSH
A Professional Corporation

1   the information Plaintiff seeks, such as the Annual Reports, independent of the CIA or

2   Felony Plea Bargain.  Adverse event reports are also publicly available via the internet on

3   the FDA's "MAUDE" database at http://www.fda.gov/cdrh/maude.html.     Thus, the

4   "impairment prong" is no bar to disclosure here.

5

6                        **b)  □□ "Competitive harm prong."**

7        "Competitive harm" in the FOIA context is "limited to harm flowing from the

8   affirmative use of proprietary information by competitors" and "should not be taken to

9   mean simply any injury to competitive position, as might flow from customer or employee

10  disgruntlement." *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1291 n.30

11  (D.C. Cir. 1983).  Importantly, "the Ninth Circuit emphasized, in *Public Citizen*, the agency

12  declarant had supported his conclusions with 'detailed and specific descriptions' of the

13  withheld information, including '*the ways in which each category of information could be*

14  *turned to [the requester's] competitive advantage*.'"  *Lion Raisins Inc. v. USDA*, 354 F.3d

15  1072, 1080 (9th Cir. 2004) (emphasis added).

16       Evidence of "actual competition and a likelihood [not mere possibility] of

17  substantial competitive injury" is all that need be shown.  *CNA Fin. Corp. v. Donovan*, 830

18  F.2d 1132, 1152 (D.C. Cir. 1987); *accord Frazee v. U.S. Forest Serv*., 97 F.3d 367, 371

19  (9th Cir. 1996); *GC Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109, 1113 (9th Cir.

20  1994); *see, e.g., Judicial Watch,* 337 F. Supp. 2d at 169 (finding that substantial harm must

21  be "likely").  Bare allegations of harm cannot support an agency's decision to withhold

22  requested documents.  *Pub. Citizen*, 704 F.2d at 1291; *Lee v. FDIC*, 923 F. Supp. 451, 455

23  (S.D.N.Y. 1996) (rejecting competitive harm without "adequate documentation of the

24  specific, credible, and *likely reasons why* disclosure of the document would actually cause

25  substantial competitive injury") (emphasis added); *Martin Marietta Corp. v. Dalton*, 974 F.

26  Supp. 37, 41 (D.D.C. 1997) (holding that neither cost and pricing data nor proprietary

27  management strategies were protected under Exemption b(4)).

28

HERSHANDHERSH
A Professional Corporation

- 16 -

1    Guidant and HHS failed to show with any particularity how a competitor could use

2    the information at issue to cause competitive injury.  Disclosure of Guidant's reports,

3    policies and procedures for compliance with the FDA regulations, training manuals, IRO

4    information, reportable events, certifications, or computer system are not likely to result in

5    such egregious injury as to disable it as an effective competitor.  By conceding that its

6    "interpretation of the [FDA's] Quality System and Medical Device Reporting requirements

7    . . . are critical to its overall function and success" (Motion at 14:17-19), Guidant embraces

8    a self-supporting construction of the law.  Indeed, its interpretation is exactly what earned it

9    the felony plea bargain and the FDA's heightened surveillance.  Further, Guidant is

10   required to conform to the FDA regulations.

11   Neither Guidant nor HHS provided, in the motion itself or the supporting affidavits,

12   any explanation as to *how* Guidant's competitors would benefit, let along the likelihood that

13   competitors would use Guidant's information.  Instead, whether these competitors would

14   benefit from release of the requested information remains purely speculative.  Fear of a

15   competitor's advantage cannot justify withholding information under FOIA Exemption

16   b(4).  In fact, due to the "unique" nature of the information sought, any perceived benefit a

17   competitor could gain is negligible at best.  Notably absent from any declaration filed in

18   support of this summary judgment is an explanation why any competitor would want to use

19   Guidant's information for a compliance program.   Given the felony convictions and

20   continued problems thereafter, any Guidant program would be the model of what not to do,

21   and the least likely program a competitor would want to copy.

22

23   c)  □□ **"Confidential or Privileged Information."**

24   If the information sought is publicly available, no FOIA Exemptions apply.  *Inner*

25   *City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys.*, 463 F.3d 239,

26   244 (2d Cir. 2006).  Examples of Guidant's compliance policy numbers, the IRO name and

27   report, and the reportable event summaries, attached as exhibits to Docket Number 67, have

28

- 17 -

HERSHANDHERSH
A Professional Corporation

been publicly available without formal objection from Guidant or HHS, *e.g.* via a motion to seal, since July. Moreover, Guidant attached unredacted versions of withheld information to its moving papers here. Thus, any Exemption claimed as to these documents and similar data has been waived. *See*, Part C, *supra.*

Further, Exemption b(4) protects only information such as the type and volume of sales, actual costs, profits margins and the like, unannounced and future products, proprietary technical information, pricing strategy, distributor information, and raw research data. *Citizens Comm'n*, 1993 WL 1610471, at *9-10; *Heeney v. FDA*, 7 F. App'x 770, 771 (9th Cir. 2001). General information regarding publicly held corporation's management structure, financial and production capabilities, corporate history and employees, most of which would be found in corporation's annual report and SEC filings, is readily available to any stockholder interested in obtaining such information. *SMS*, 1989 WL 201031, at *4. Likewise, Guidant's annual reports are not confidential or privileged because they are regularly produced to the public. *See*, *e.g.*, http://www.secinfo.com, *Guidant* (available for free).

In addition, medical device manufacturers compete on a variety of factors including product design and development: corporate structure and strategies in implementing compliance with FDA regulations are not likely to substantially aid competitors. This is particularly true given that "compliance policies are highly customized and are tailored to a company's specific business activities, organizational structure, and other needs." Motion at 14. Indeed, neither HHS nor Guidant allege that competitors would restructure their companies, let alone their compliance programs, upon learning of Guidant's internal compliance policies. Instead, it is apparent that competitors would have nothing to gain from Guidant's compliance programs. Further, Guidant provides training seminars to openly encourage competitors to follow its compliance program. Decl. ¶21 Exh. N (presentation by Guidant's Chief Compliance Officer, Kathy Lundberg, and Johnson & Johnson's VP Health Care Compliance, Louise Mehrotra, entitled "A Primer on

- 18 -

HERSHANDHERSH
A Professional Corporation

1    Compliance Programs for Pharmaceutical and Medical Device Companies," dated June 6,

2    2005).  This evidence demonstrates that it is only Plaintiff that HHS and Guidant seek to

3    keep information from because they are concerned about public scrutiny.

4

5    **F.    PLAINTIFF HAS NO OBLIGATION TO RETURN ANY DOCUMENTS
         PRODUCED BY HHS.**

6

7            Guidant and HHS "implore" the Court to compel the return of documents by

8    claiming that they were "inadvertently" produced.  A "majority of federal courts . . . have

9    adopted a five-factor test to determine whether an inadvertent production actually

10   occurred." *Flores v. Albertson's, Inc.*, No. 01-0515, 2004 WL 3639290 (C.D. Cal. April 9,

11   2004) (compelling return of 38 inadvertently produced income documents, which raised

     defendant's concerns about multiple social security number use by plaintiffs); *Bagley v.*

12   *TRW, Inc.*, 204 F.R.D. 170, 177 (C.D. Cal. 2001); *Hartford Fire Ins. Co. v. Garvey*, 109

13   F.R.D. 323, 332 (N.D. Cal. 1985).  Those five factors are: (1) the reasonableness of the

14   precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the

15   scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of

16   fairness to the disclosing party. *Flores*, 2004 WL 3639290, at *1, *5.  Neither Guidant nor

17   HHS provides an explanation of why these documents are privileged or legal precedent

18   requiring us to return the documents.

19

20           Here, the facts overwhelmingly demonstrate that the documents were not

21   "inadvertently" produced; rather, HHS regrets producing them.  First, HHS used a "FOIA

     Specialist" to review the documents prior to production.  The mere fact that the reviewer's

22   title is "specialist" demonstrates the degree of expertise that individual possessed when he

23   or she reviewed the documents to prevent inadvertent disclosure.  Second, no one raised

24   concerns of inadvertent production until July 2007, well over a year after HHS' initial

25   production in March 2006.  Third, no one disputes that the documents are directly

26   responsive to Plaintiff's FOIA request.  Fourth, the contested documents bear non-

27   confidential information and the only declaration from any Guidant employee stating the

28

                                           - 19 -

HERSHANDHERSH
A Professional Corporation

HERSHANDHERSH
A Professional Corporation

1   documents were private, not meant for public dissemination, or could somehow assist

2   Guidant's competitors was received in connection with this summary judgment motion.

3   But, the conclusory statements in Eckert's Declaration fail to explain *why* disclosure would

4   harm Guidant. Fifth, neither HHS nor Guidant explains *how* disclosure prejudices either

5   party. Guidant has not set forth any reason why the documents are privileged until this

6   summary judgment motion. Importantly, Guidant has not alleged that the documents at

7   issue have not been produced in other lawsuits (such as the MDL and state court

8   proceedings in Minnesota). In fact, Guidant promised to identify the specific documents

9   that were supposedly inadvertently produced, but never did. Decl. ¶26, Exh. S.

10   Accordingly, the documents are not "inadvertently" produced, as defined by the California

11   federal courts.

12   Instead, the surrounding circumstances indicate the specific intent on the part of

13   HHS to consent to the disclosure of the information. Notably, Plaintiff was first alerted to

14   an alleged "inadvertent" production by Guidant, not the source of the production: HHS.

15   Neither Guidant nor HHS ever moved to seal the exhibits filed with the Court (*see, e.g.*,

16   Dkt. No. 67), or provided Plaintiff with a stipulation to seal the documents. Because the

17   documents were filed with the Court, they are instantly available to anyone with access to

18   PACER and are also available to the general public through a court records request. But,

19   these documents have been readily available to the public, without formal objection, since

20   July. *See* Dkt. No. 67; Decl. ¶¶17-18. HHS cannot back-pedal now and claim that certain

21   previously disclosed documents (or portions thereof) are now exempted and therefore were

22   inadvertently produced.

23   The case *State Compensation Insurance Fund v. WPS, Inc.* does not apply to the

24   circumstances here. The controlling rule of law issued by that decision was that an attorney

25   must return documents that are obviously privileged and unintended for disclosure. That is

26   not the case here. Decl. ¶28, ¶30, Exhs. U, W; *see also* Complaint at ¶12 ("On March 31,

27   2006 . . . Plaintiff received an "interim response" containing 859 pages of documents, with

28

- 20 -

non-sequential Bates Number and approximately 250 unnumbered pages. *The documents were neither indexed nor organized in any recognizable fashion*") (emphasis added).  Based on the fact that certain information HHS withheld is publicly available, or could be found unredacted elsewhere in the "corrected" production, Plaintiff believed in good faith that HHS' production was sloppy, but not unintentional.  Plaintiff therefore has no duty to return any documents.

## G.  THE COURT SHOULD REVIEW THE RESPONSIVE DOCUMENTS *IN CAMERA* TO UNEARTH HHS' WRONGFUL WITHHOLDINGS.

An *in camera* inspection is necessary and appropriate (1) where affidavits are not sufficiently detailed, (2) where the plaintiff alleges waiver of exemptions, or (3) to verify the agency's withholdings.  5 U.S.C. §552(a)(4)(B); *Nowak v. U.S.*, No. 98-56656, 2000 WL 60067, at *2 (9th Cir. Jan. 21, 2000) (finding *in camera* review unnecessary where affidavits were sufficiently detailed); *Pub. Citizen v. U.S. Dep't of State*, 787 F. Supp. 12, 13 (D.D.C. 1992) (finding exemptions properly invoked after reviewing records in camera), *aff'd*, 11 F.3d 198 (D.C. Cir. 1993); *see, e.g., Lion Raisins Inc.*, 354 F.3d 1072, 1082 (9th Cir. 2004) (acknowledging that "[u]nder certain limited circumstances, we have endorsed the use of *in camera* review of government affidavits as the basis for FOIA decisions"); *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988) ("[W]here a trial court properly reviewed contested documents *in camera*, an adequate factual basis for the decision exists."); *Judicial Watch, Inc. v. Dep't of the Army*, 402 F. Supp. 2d 241, 249 & n.6 (D.D.C. 2005) (ordering *in camera* inspection to review accuracy of agency's descriptions of withheld information after inadvertent disclosure revealed discrepancies and inaccuracies in *Vaughn* Index).

Plaintiff showed that HHS' affidavit lacks the requisite detail and HHS and Guidant waived all exemptions.  *See*, Parts A.1-2, *supra.*  Thus, an *in camera* review is critical to verify HHS' remaining claims of exemption.  This is particularly true where the total number of documents is relatively small.  Here, HHS claims a universe of 4,563 pages (two

- 21 -

bankers boxes) was reviewed, of which 3,265 pages are either entirely or partially withheld. Decl. ¶13, Exh. I.   Accordingly, the Court should review the withheld information, in conjunction with the CIA, Felony Plea Bargain, and the allegedly "inadvertent" information attached as Exhibits to Docket Number 67.   Upon review, the Court will likely determine the remaining information HHS withholds is not exempt.

## H.   THE COURT SHOULD SANCTION HHS AND GUIDANT FOR BRINGING THIS MOTION AND SUPPORTING AFFIDAVITS IN BAD FAITH.

Where affidavits are presented in bad faith, the court shall order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt. Fed. R. Civ. Proc. 56(g).

Here, where so much of the information Plaintiff seeks is publicly available, or the potential FOIA protections have been waived, HHS' and Guidant's assertions to the contrary are wholly inappropriate.   HHS' sole affidavit fails to meet a single element of HHS' burden on summary judgment: personal knowledge of the documents themselves and the detailed reasons why certain information was exempted from disclosure.   Accordingly, the Court should sanction HHS and Guidant.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court DENY summary judgment and further rule that Plaintiff has no obligation to return any documents. In addition, the Court should GRANT Plaintiff's request for sanctions due to the egregiously inaccurate and baseless statements in HHS' and Guidant's affidavits filed in support of summary judgment.

DATED:   November 21, 2007.                    HERSH & HERSH
                                               A Professional Corporation


                                               By _____
                                               JEANETTE HAGGAS
                                               Attorneys for Plaintiffs

- 22 -

HERSH AND HERSH
A Professional Corporation