UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HERSH & HERSH,

    Plaintiff,

    v.

US DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

    Defendants.
_____/

No. C 06-4234 PJH

**ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING SUMMARY JUDGMENT IN PART**

Defendant's and the intervenor's motion for summary judgment came on for hearing before this court on January 23, 2008. Plaintiff Hersh & Hersh ("plaintiff") appeared through its counsel, Mark Barton and Jeanette Haggas. Defendant, the U.S. Department of Health & Human Services ("HHS") and intervenor Guidant Corporation ("Guidant") (collectively "defendants"), appeared through their respective counsel, Sara Winslow, James Vines, Tom Woods, and Simeon Schopf. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion in part and DENIES the motion in part, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This action arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff seeks injunctive relief for the expedited processing and release of agency records requested by plaintiff from the Office of Inspector General ("OIG"), a division of HHS. See Complaint for Injunctive Relief ("Complaint"), ¶ 1.

    A.    Background Allegations

On September 19, 2005, plaintiff requested certain records from the OIG pursuant to

FOIA. These records generally relate to information submitted by Endovascular Technologies ("EVT") – a subsidiary of Guidant – pursuant to a felony plea agreement and Corporate Integrity Agreement ("CIA") that EVT entered into with the OIG as the result of earlier criminal misconduct. See Complaint, ¶ 7. Plaintiff requested these documents in connection with a separate lawsuit brought by plaintiff against Guidant, in which plaintiff seeks relief on behalf of numerous plaintiffs medically implanted with Guidant's products. Id. Plaintiff specifically requested:

- Implementation Reports
- Annual Reports
- Data Monitoring Committee Review Reports; and
- Independent Review Organization ("IRO") Reports, including all Medical Device Reporting Review Reports

See Declaration of Robert Eckert ISO Mot. Summary Judgment ("Eckert Decl."), Ex. 1. The OIG failed to respond to plaintiff's September 19 request within the statutory 20 days prescribed by FOIA. See Complaint ¶ 8. Plaintiff therefore renewed its request in the form of a November 1, 2005 letter. See id.; see also Eckert Decl. ¶ 9. On November 3, 2005, OIG acknowledged receipt of plaintiff's FOIA request and indicated that it forwarded the request to the HHS FOIA office. Complaint ¶ 10.

HHS responded to the request on March 31, 2006, releasing 859 pages of responsive information. HHS withheld, however, certain documents and portions of documents based on trade secret and commercial/financial information exemptions, and noted that additional records would be forthcoming. Id. ¶ 12. Despite numerous phone and email communications to the HHS FOIA office, plaintiff alleges that it did not thereafter receive the additional documents. Nor was plaintiff given an anticipated date of completion. Instead, plaintiff alleges that it was informed to file a complaint to expedite receipt of the documents. Id. ¶ 13. Plaintiff did so on July 10, 2006, alleging a single cause of action for violation of FOIA and for wrongful withholding of agency records. See id. at ¶¶ 15-19.

2

After the filing of plaintiff's complaint, on February 27, 2007, HHS issued a second, and purportedly "final," response to plaintiff's September 19, 2005 FOIA request. See Eckert Decl., Ex. 4. In its response, HHS enclosed 439 pages, again withholding and redacting documents on the basis of the same FOIA exemptions employed by the agency in its first production.

Plaintiff filed an administrative appeal of this final ruling on March 23, 2007, which is pending concurrently with the instant litigation.

B.     Procedural History

On May 9, 2007, Guidant moved to dismiss plaintiff's complaint, arguing that plaintiff had failed to exhaust its administrative remedies, since plaintiff did not file an administrative appeal of HHS's March 31, 2006 ruling before filing the instant suit. The court denied the motion, finding that plaintiff's administrative appeal of HHS's final February 27, 2007 ruling cured the defect. See May 11, 2007 Order Denying Motion to Dismiss ("May 11, 2007 Order") at 4-5.

Then, on July 25, 2007, the parties brought three motions before the court: (1) HHS's 12(b)(1) motion to dismiss on grounds that plaintiff failed to pay the customary fees under FOIA; (2) HHS's motion for relief from premature discovery on grounds that discovery was inappropriate until such time as the court ruled on the parties' summary judgment motion; and (3) Guidant's motion to remand the case to HHS to resolve the appeal. On July 26, 2007, the court denied the first motion in part and granted it in part, instructing plaintiff to pay all fees due immediately, but declining to dismiss the complaint on that basis. The court also granted HHS's second motion for relief from premature discovery, instructing the parties to file any limited requests for discovery after the filing of any motions for summary judgment, and further instructing the parties to file a stipulated briefing schedule for dispositive motions after HHS had resolved the pending appeal. Finally, as a corollary to this ruling, the court granted Guidant's motion to remand plaintiff's appeal to HHS for resolution. See generally July 26, 2007 Order Denying Motion to

3

Dismiss in part and Granting it in part; Granting Relief from Premature Discovery; and Remanding Case ("July 26, 2007 Order").

Subsequently, the parties duly filed a stipulated briefing schedule, calling for the filing of a joint summary judgment motion by Guidant and HHS, which was heard on January 23, 2008.  After the motion was heard, the court issued an order requiring further briefing on January 28, 2008.  The court's order noted that defendants had failed to submit any evidence with respect to the second prong of the FOIA exemption set forth at 5 U.S.C. § 552(b)(4), which defendants claimed to rely upon.  In view of the court's desire to have a complete record before it for evaluation, defendants were instructed to submit further competent evidence on the foregoing point, if they wished to have the court evaluate the applicability of the particular exemption ground at issue.

Defendants thereafter submitted further evidence in compliance with the court's order on February 11, 2008.  Plaintiff submitted a response thereto on February 18, 2008.  Defendants' motion is now properly before the court.

**DISCUSSION**

A.   Legal Standards

FOIA requires, that unless an exemption applies, "each agency, upon any request for records which (i) reasonably describes such records, and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).

An agency has a duty to construe a FOIA request liberally. Truitt v. Dep't of State, 897 F.2d 540, 544-45 (D.C. Cir. 1990)(citing Senate Report accompanying relevant provision of FOIA).  The agency is under a duty to conduct a "reasonable" search for responsive records using methods that can be reasonably expected to produce the information requested to the extent they exist.  5 U.S.C. § 552(a)(3)(C); see also SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991); Ogleby v. United States Dept. of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Zemansky v. United States EPA, 767 F.2d 569,

571 (9th Cir. 1985).

While there is no requirement that an agency search every record system, Truitt, 897 F.2d at 542, or that a search be perfect, Meeropol v. Meese, 790 F.2d 942, 955-56 (D.C. Cir. 1986), the search must be conducted in good faith using methods that are likely to produce the information requested if it exists. See Campbell v. United States Department of Justice, 164 F.3d 20, 27 (D.C. Cir.1998).  An agency is not, however, "required to reorganize its files in response to a plaintiff's request in the form in which it was made." Church of Scientology v. IRS, 792 F.2d 146, 150-151 (D.C. Cir. 1986).  It is sufficient that the searching person identified the employees who might have responsive documents, reviewed certain documents, and requested that agency employees forward responsive documents to her.  See O'Reilly, Federal Information Disclosure, § 9:12, at 217 (2007 Suppl.).

As a general rule, all FOIA determinations should be resolved on summary judgment. See Nat'l Wildlife Fed'n v. U.S. Forest Service, 861 F.2d 1114 (9th Cir. 1988); O'Reilly, Federal Information Disclosure, § 8:21, at 173 (2007 Suppl.) (numerous citations); Sakamoto v. U.S. Environmental Protection Agency, 443 F.Supp.2d 1182, 1188  (N.D. Cal. 2006).  Before it can obtain summary judgment in a FOIA case, however, an agency must show beyond a material doubt, and viewing the facts in the light most favorable to the requester, that it "has conducted a search reasonably calculated to uncover all relevant documents." Steinberg v. United States Department of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. United States Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

The court may award summary judgment solely on the basis of information provided by the agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency

5

bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973).   Agency affidavits or declarations must be "relatively detailed and non-conclusory." SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  Id.  While the affidavits or declarations submitted by the agency need not "set forth with meticulous documentation the details of an epic search for the requested records," Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982), they must "describe what records were searched, by whom, and through what processes," Steinberg, 23 F.3d at 552, and must show "that the search was reasonably calculated to uncover all relevant documents." Weisberg v. United States Department of Justice, 705 F.2d 1344, 1350-51 (D.C.Cir. 1983); see Campbell Justice, 164 F.3d at 27. Conclusory statements that the agency has reviewed relevant files are insufficient to support summary judgment. Nation Magazine, 71 F.3d at 890.

B.     Defendants' Motion for Summary Judgment

The key issues for resolution are:  (1) whether the evidence relating to the adequacy of defendants' search for responsive documents is sufficient to meet defendants' burden on summary judgment; and (2) whether that evidence supports defendants' withholding of documents (and portions of documents) pursuant to exemptions b(4) and b(6) of FOIA. Defendants have also requested that the court order the return of numerous documents that they assert were inadvertently produced to plaintiff.

1.     Sufficiency of Supporting Affidavits and Vaughn Index

Defendants' evidentiary support includes:  (1) a declaration from HHS FOIA officer Robert Eckert; (2) the accompanying 59-page Vaughn Index identifying the specific documents and information withheld and the reasons therefor; (3) a declaration from Guidant's Global Compliance Director, Dr. Michele Chin-Purcell; and (4) a declaration from the Assistant Inspector General for Legal Affairs for the OIG, Gregory Demske.  See

generally Declaration of Robert Eckert ISO Mot. for Summary Judgment ("Eckert Decl."); Declaration of Michele Chin-Purcell ISO Mot. for Summary Judgment ("Chin-Purcell Decl."); Declaration of Gregory Demske ISO Mot. for Summary Judgment ("Demske Decl."). Plaintiff argues that defendants' evidentiary basis for summary judgment is deficient, however, because the supporting affidavits (and accompanying Vaughn index) are inadequate, and because they have been made in bad faith.

First, plaintiff asserts that Mr. Eckert's supporting declaration lacks personal knowledge of the decision as to which documents to withhold, and is furthermore replete with inadmissable hearsay statements. Mr. Eckert's declaration does not state, for example, that he personally conducted the search for documents, and it also does not actually set forth the reasons for defendants' nondisclosure of the withheld documents. Second, plaintiff argues that both Mr. Eckert's declaration and the supporting declaration of Dr. Chin-Purcell *both* contain wholly conclusory statements that fail to explain defendants' nondisclosure of documents, such that bad faith has been demonstrated.

Both arguments are unpersuasive. With respect to Mr. Eckert's declaration, while true that Mr. Eckert does not aver that he personally conducted the search for documents, there is no legal requirement that he do so. Rather, as defendants note, courts have overruled objections based on lack of personal knowledge as long as the supervisor in charge of coordinating the agency's search efforts, or responsible for same, has submitted an affidavit describing the search. See, e.g., Carney v. U.S. Dep't of Justice, 19 F.3d 807, 814 (2d Cir. 1994)("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search"); see also Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991). This is the case here. As such, plaintiff's objections to the Eckert Declaration are overruled. Moreover, while also true that the body of Mr. Eckert's declaration does not set forth in writing the agency's rationale for withholding documents, or portions thereof, under the applicable exemptions, it

does incorporate the Vaughn index, which itself contains detailed entries for each withholding. See Eckert Decl., Ex. 8; see also, e.g., Minier v. Central Intelligence Agency, 88 F.3d 796, 803 (9th Cir. 1996)(a Vaughn index must identify each document withheld, and provide a particularized explanation of how disclosure would violate an exemption). Furthermore, Mr. Eckert's declaration affirmatively states that a more detailed explanation as to the nature of the withheld documents is contained in the Chin-Purcell Declaration submitted on behalf of Guidant. See Eckert Decl., ¶ 1. And contrary to plaintiff's argument, appellate courts have held that an evidentiary basis for summary judgment in FOIA cases *can* appropriately be made, as here, by third-party defendants who supplied the confidential documents to the agency in the first place. See, e.g., Greenberg v. Food & Drug Admin., 803 F.2d 1213 (D.C. Cir. 1986)(once the document owner establishes a prima facie case of confidential status, the burden of proof shifts to the requester to overcome that showing). In sum, plaintiff's objections to Mr. Eckert's declaration are without merit.

Second, and with respect to plaintiff's bad faith allegations regarding the Eckert and Chin-Purcell declarations, the court finds that the existence of bad faith has not been demonstrated. As a general matter, the mere allegation of bad faith should not "undermine the sufficiency of agency submissions." Carter v. United States Dep't of Commerce, 830 F.2d 388, 393 (D.C.Cir.1987). Accordingly, before rejecting an affidavit on grounds of bad faith, "[t]here must be tangible evidence of bad faith." Id. Such tangible evidence might include where the evidence of the declarations are contradicted by other evidence in the record, or where there is an unreasonable delay in responding to the request (but even when there is delay, no disclosure shall be ordered if exemptions apply). See id.; see also Minier v. Central Intelligence Agency, 88 F.3d at 803. Here, however, plaintiff has not pointed to any evidence that the statements in either declaration are flatly contradicted anyplace else (notwithstanding plaintiff's vague allusions regarding the practices and procedure of Guidant's competitors, like Pfizer), nor is there any evidence of unreasonable delay. The first responsive production here occurred in March 2006, just 6 months after the

1  FOIA request was first made, and after correspondence regarding status had been
2  exchanged between the parties. Accordingly, the court finds no "tangible evidence" of bad
3  faith.
4      In sum, plaintiff's objections to defendants' evidentiary basis are overruled. The
5  court finds, after review of the evidence, that defendants have properly submitted
6  declarations that describe "the documents and the justifications for non-disclosure with
7  reasonably specific detail.. and [which] are not controverted by either contrary evidence in
8  the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d
9  724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir.
10 1973).
11     Having so concluded, the next issue for the court is whether defendants have
12 successfully demonstrated – via reference to the Vaughn index and supporting affidavits –
13 that the claimed exemptions apply here, and justify nondisclosure of the documents (and
14 portions thereof) in question.
15     2.    Applicability of FOIA Exemptions
16         a.    trade secrets/confidential commercial information
17 Defendants assert that they have properly withheld and redacted numerous
18 categories of records containing confidential commercial or financial information, pursuant
19 to FOIA exemption b(4). See 5 U.S.C. § 552(b)(4)(exemption covers "trade secrets and
20 commercial or financial information obtained from a person [that is] privileged or
21 confidential"). Generally speaking, the exemption prevents the disclosure of (1)
22 commercial and financial information, (2) obtained from a person or by the government, (3)
23 that is privileged or confidential. See, e.g., GC Micro Corp. v. Defense Logistics Agency,
24 33 F.3d 1109, 1112 (9th Cir. 1994). Commercial or financial matter is in turn "confidential"
25 for purposes of FOIA if disclosure of the information is likely to have *either* of the following
26 effects: (1) to impair the Government's ability to obtain necessary information in the future;
27 or (2) to cause substantial harm to the competitive position of the person from whom the
28

9

1  information was obtained.  See id.; see also National Parks and Conservation Ass'n v.
2  Morton, 498 F.2d 765, 770 (D.C.Cir.1974).

3  The key dispute here is whether the documents being withheld and the information
4  being redacted are sufficiently "confidential."  Defendants contend that both prongs of the
5  above National Parks test are satisfied (i.e., both the impairment prong and the competitive
6  harm prong), while plaintiff asserts that neither is.  Upon review of the supplemental
7  declaration submitted by Mr. Demske, the court has concluded that defendants are correct
8  as to the first National Parks prong:  disclosure of the information sought here is likely to
9  impair the Government's ability to obtain necessary information in the future.

10  The information sought is contained in documents that were produced by Guidant in
11  compliance with the CIA entered into between HHS and Guidant's subsidiary corporation.
12  The OIG, acting on behalf of HHS, generally enters into CIAs with entities as part of the
13  resolution of civil and administrative health care fraud cases.  See Demske Decl., ¶ 2.  In
14  exchange for an entity's agreement to be bound by a CIA, the OIG agrees not to seek
15  exclusion of that entity from participation in federal health care programs.  See id.  As
16  explained by defendants at the hearing on the instant motion, the entity's decision to enter
17  into a CIA is voluntary.  Once an entity enters into a CIA, the CIA typically requires the
18  subject entity to adopt measures designed to promote compliance, and to submit annual
19  reports and documents addressing the requirements of the CIA, including the results of
20  audits and reviews.  Id. at ¶ 2.  These types of documents often include confidential or
21  proprietary information.  Indeed, a frequent concern raised by the subject entities during
22  negotiation of the CIA is what type of protection the government will extend to the subject
23  entity's confidential and proprietary information.  Id. at ¶ 3.

24  This concern was raised here.  Guidant's Director of Global Compliance, Ms. Chin-
25  Purcell, personally transmitted the implementation reports and annual reports required
26  under the CIA.  In doing so, she expressly notified OIG that the documents submitted were
27  confidential and subject to exemption under FOIA.  See Chin-Purcell Decl., ¶ 16.  Ms. Chin-
28

Purcell's declaration furthermore contains a category by category description of the documents at issue, and an explanation as to how and why each is confidential.

Aside from the subject entity's (i.e., Guidant's) concern over the release of confidential documents, however, defendants have also submitted evidence addressing the *government's* concern over the same. Mr. Demske's declaration avers that, if the OIG were to release confidential proprietary information submitted under a CIA, subject entities under CIAs would "be reluctant to submit complete information with their annual reports, thereby impairing the OIG's ability to monitor the CIAs." See Demske Decl., ¶ 4. Moreover, this would "severely impair" the OIG's ability to "negotiate meaningful CIAs in the future." Id.

In sum, the above facts are sufficient to demonstrate that, as part of the negotiations attendant to the execution of the CIA between Guidant and the OIG, and as understood by Guidant, the government obligated itself in good faith not to disclose the documents or information received pursuant to the CIA. As such, disclosure of Guidant's documents here would impair the government's ability to secure voluntary execution of CIAs in future.

Plaintiff, moreover, presents no adequate grounds for holding otherwise. Plaintiff argues that some of the documents withheld by HHS were made publicly available in the court's electronic docketing system, and that other information is regularly produced to the public – e.g., by way of required public filings. See Opp. Br. at 17-18.[1] However, as discussed further below, those documents made publicly available on the docketing system were inadvertently produced by defendants, must be returned to them, and cannot form the

---

[1] Plaintiff also argues, in connection with both exemptions, that defendants waived all "privileges" with respect to any of the documents that Guidant turned over to HHS, by virtue of the plea agreement that was entered between Guidant's subsidiary and the federal government. This argument is wholly unpersuasive. First, as defendants point out, the plea agreement waiver provision relied on by plaintiff applied only to claims against the government, and was meant to ensure that the government had access to all relevant Guidant documents. See, e.g., Declaration of Jeanette Haggas ISO Opp. to Summary Judgment ("Haggas Decl."), Ex. A at ¶ 10c. Second, the waiver provision did not apply to claims involving third parties. Indeed, the government expressly contracted "to maintain the confidentiality" of all materials produced by Guidant under the agreement as against third parties. See id.

11

basis for a waiver argument here. As for other information that plaintiff asserts is regularly produced to the public – e.g., Guidant's annual reports – defendants explained at the hearing on the instant motion, that the annual reports sought here are of a different nature than those annual reports that are regularly filed as part of Securities and Exchange Committee ("SEC") compliance filings.

In sum, the court finds that defendants have satisfied the first prong of the National Parks test. And since there is no other dispute as to whether the information qualifies as commercial or financial, or as to whether it was obtained from a person or by the government, the court concludes that defendants have also met their burden in demonstrating that the b(4) exemption applies. Defendants' withholding and redaction of documents is therefore warranted.[2]

        b.        personnel information

Defendants also assert that several of the withheld documents are covered by FOIA exemption b(6), which covers "personnel" files, and which prohibits disclosure where it would constitute "a clearly unwarranted invasion of personal privacy." See 5 U.S.C. § 552(b)(6). Exemption b(6) requires that courts balance the public interests in disclosure against the privacy interests that would be harmed by disclosure. See United States Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 762 (1989); see also Painting Industry of Hawaii Market Recovery Fund v. U.S. Dept. of Air, 26 F.3d 1479, 1482 (9th Cir.1994). The Ninth Circuit has balanced four factors to determine whether the disclosure constitutes a "clearly unwarranted invasion of personal privacy:" (1) the plaintiff's interest in disclosure, (2) the public's interest in disclosure, (3) the degree of the invasion of personal privacy, and (4) the availability of any alternative means of obtaining

---

[2] In view of this holding concerning the impairment prong, it is unnecessary for the court to consider whether disclosure of the information sought is warranted under the second prong of the National Parks test – i.e., substantial competitive harm. The court does observe, that defendants' showing as to this second prong is not as persuasive as the first. This is ultimately a non-issue, however, in view of defendants' submission of the Demske Declaration, and the court's acceptance of it as competent proof that the impairment prong is satisfied.

the requested information.  See Van Bourg, Allen, Weinberg & Roger For and on Behalf of Carpet, 728 F.2d 1270, 1273 (9th Cir. 1984).

Here, the withheld documents comprise about 18 pages' worth of documents, which include Guidant employees' personal identification and/or contact information.  See Reply Br. At 11:14-15.  An example of the type of information redacted can be found on page 1 of the Vaughn Index, entry no. 1.  See Eckert Decl., Ex. 8 at 1.  The entry itemizes a transmittal letter dated August 27, 2004.  It then states that the withheld portion of the document contains the "name and signature" of a Guidant employee, which are not publicly available.  See id.  This entry, as well as the remaining entries that invoke the b(6) exemption, are purportedly supported by the Chin-Purcell declaration, which states that documents withheld under the b(6) exemption "plainly implicate protected privacy interests."  See Chin-Purcell Decl., ¶ 41.

Looking at the four factors set forth above, the court agrees with plaintiff that the public's interest in disclosure outweighs the privacy interests involved.  First, plaintiff has an interest in the withheld information because it may help ensure that Guidant is complying with the terms of the CIA.  The public has the same interest in ensuring compliance.  By contrast, the degree of invasion of personal privacy with respect to the personal information contained in the limited documents and redactions is not strong here.  While defendants are correct that the case law has long recognized a privacy interest in private citizens' identities, home addresses, home telephone numbers, social security numbers, medical information, etc., defendants do not actually dispute that the only information they are claiming exemption for here are the *business* addresses, phone numbers, and job titles of Guidant employees.  This type of information does not implicate the same type of heightened concerns.  Indeed, it is difficult to imagine "the injury and embarrassment that can result from the unnecessary disclosure" of the personal business-related information at issue here.  See, e.g., Bowen v. U.S. Food & Drug Admin., 925 F.2d 1225, 1228 (9th Cir. 1990).  Moreover, plaintiff has pointed out, and defendants have not disputed, that some of

the information at issue is publicly available already.  See Haggas Decl., Exs. J-L, O-Q.  As such, the court is unpersuaded by defendants' argument that disclosure of the 18 pages would constitute a "clearly unwarranted invasion of privacy."

In sum, defendants have failed to meet their burden in establishing that exemption b(6) applies to the 18 pages of Guidant employees' business signatures, business contact and job title information.  Accordingly, all such information must be produced.  To the extent, however, that the information withheld or redacted includes the signature of an employee whose identity as a Guidant employee or member is not disclosed in any public forum, or the private home addresses, home telephone numbers, social security numbers, etc., the exemption applies to shield such information from disclosure.

### 3. Inadvertent Production of Documents

Finally, defendants also request that the court instruct plaintiff to hand over the initial productions of March 2006 and February 2007, since defendants' August 2007 production superceded these productions, which contained inadvertently produced documents.

As the court stated at the hearing, plaintiff must return the earlier productions in whole.  Defendants' claim that they did not become aware of the inadvertently produced documents until July 2007 (when plaintiff attached the inadvertently produced documents to a motion to compel) is supported by the record.  It is undisputed that in July 2007, defendants informed plaintiff that they had become aware of the inadvertent productions, and requested that the documents be returned.  See Declaration of Darolyn Y. Hamada ISO Mot. Summary Judgment ("Hamada Decl."), Ex 1.  Since that time, defendants have requested, on several occasions, that plaintiff return the documents to defendants.  See Hamada Decl., Exs. 1-3; Eckert Decl., Ex. 5, 7; Winslow Decl., Ex. 1.  It was only upon the failure to secure the cooperation of plaintiff in this regard, that defendants re-processed plaintiff's FOIA request in its entirety, and issued a revised production in August 2007.

In light of defendants' consistent efforts at securing return of the documents, the fact that plaintiff was long ago placed on notice of this inadvertent production, and defendants'

1  August 2007 production replacing all earlier productions, the court therefore orders plaintiff
2  to return all previously produced documents to defendants.  Any inadvertently produced
3  documents that have been filed in the public docket pertaining to this action, shall be
4  withdrawn from the docket.  According to the January 25, 2008 letter received from HHS,
5  the affected docket nos. include docket nos. 67, 82, and 86.

C. Conclusion

For the foregoing reasons, the court hereby GRANTS summary judgment in defendants' favor with respect to the applicability of FOIA exemption b(4).  Summary judgment with respect to the applicability of FOIA exemption b(6) is DENIED.  Any documents and information withheld or redacted pursuant to this exemption must be produced to plaintiff (except as otherwise noted above).

The court also ORDERS plaintiff to return in whole defendants' initial production dated March 2006 and February 2007, and to withdraw any inadvertently produced documents from the public record, no later than April 9, 2008.

Finally, to the extent that plaintiff's request for sanctions can be construed as a valid motion for sanctions, the motion is DENIED, in view of the court's grant of summary judgment in defendants' favor as to FOIA exemption b(4).

It appears to the court that there are no other issues pending in this case.  The parties are requested to notify the court No later than April 9, 2008 whether a judgment may be entered.

**IT IS SO ORDERED.**

Dated: March 31, 2008

PHYLLIS J. HAMILTON
United States District Judge

15